UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| DARREN GILBERT,<br><br>        Plaintiff,<br><br>   v.<br><br>7-ELEVEN, INC. dba 7-ELEVEN #23615; JATINDER BRAR dba 7-ELEVEN #23615; JATINDER SINGH BRAR dba 7-ELEVEN #23615; I-CHUNG HO, Trustee of the HO LIVING TRUST dated October 26, 1991; MIN-CHING HO, Trustee of the HO LIVING TRUST dated October 26, 1991; and KATHLEEN A. HO,<br><br>        Defendants. | No. 2:21-cv-01984 WBS KJN<br><br>MEMORANDUM OF DECISION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW |

----oo0oo----

        Plaintiff Darren Gilbert brought this action against defendant 7-Eleven, Inc.[1] ("7-Eleven") alleging that he

---

[1] The parties have stipulated to the dismissal of defendants Jatinder Brar and Jatinder Singh Brar, allegedly doing business as 7-Eleven #23615; I-Ching Ho and Min-Ching Ho, Trustees of the Ho Living Trust; and Kathleen A. Ho. (Docket No. 52.) Because of the stipulation, 7-Eleven, Inc. is the only

1

encountered certain physical barriers to access when he purchased items at a 7-Eleven store. He asserts that these barriers and others present at the store violate the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"); the Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51 et seq.; and Cal. Health & Safety Code § 19955 et seq. (Compl. (Docket No. 1).) The court held a bench trial on plaintiff's claims on September 26 and 27, 2023. This memorandum constitutes the court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

I. Findings of Fact

    1. Gilbert visited 7-Eleven #23615, located at 348 Elkhorn Boulevard in Rio Linda, California ("the Store") on August 3, 2021 and June 4, 2022.

    2. The Store is a convenience store which is open to the public.

    3. The Store was built in 1983.

    4. Gilbert lives in Modesto, California.

    5. Due to infections, Gilbert lost his left leg below the knee to amputation as well as two toes from his right foot.

    6. Gilbert prefers to use his prosthetic leg when ambulating.

    7. Gilbert uses a wheelchair for mobility when his condition is such that he cannot easily ambulate with his prosthetic leg.

    8. At the times of his visits to the Store in 2021

---

remaining defendant in the case, and the court uses the term "defendant" to refer to 7-Eleven.

and 2022, Gilbert could ambulate using his prosthetic leg.

9. Gilbert owns a van with a ramp that allows him to offload into and out of his vehicle while using his wheelchair.

10. Gilbert has suffered multiple strokes that affect his ability to balance and walk, including a series of strokes between December 2022 and January 2023 which have left him confined to a wheelchair.

11. Gilbert's August 3, 2021 visit to the Store was made while traveling from his home in Modesto to visit his father, who lives in Oroville, California.

12. Gilbert's June 4, 2022 visit to the Store was made while traveling to the Aerospace Museum of California, located at 3200 Freedom Park Drive in McClellan, California.

13. During Gilbert's August 3, 2021 visit to the Store, the van accessible parking stall was occupied, and he parked his van in an adjacent stall.

14. During Gilbert's August 3, 2021 visit to the Store, the designated van accessible parking stall was located farther from the Store entrance than other, non-accessible parking stalls.

15. During Gilbert's August 3, 2021 visit to the Store, after parking, he exited his vehicle and, using his prosthetic leg, walked behind the vehicle parked in the van accessible parking stall and walked up the sidewalk curb ramp from the stall access aisle to the sidewalk in front of the store.

16. During Gilbert's August 3, 2021 visit to the Store, he had some difficulty in walking up the sidewalk curb

1  ramp because of its excessive and uneven slope, due to his
2  balance issues.  Gilbert also was tired because of the "energy"
3  he had to expend to get into the store.
4        17.  Based on a subsequent inspection by plaintiff's
5  expert, the access aisle next to the designated van-accessible
6  parking stall measured less than 96 inches in width while the
7  parking stall measured less than 132 inches in width.
8        18.  Based on a subsequent inspection by plaintiff's
9  expert, the designated accessible parking stall and access aisle
10 contained slopes over 2.08% and vertical changes in level over
11 1/4 inch high.
12       19.  Based on a subsequent inspection by plaintiff's
13 expert, the curb ramp contained slopes in excess of 8.33% in the
14 direction of travel and cross slopes in excess of 2%, and the top
15 landing of the curb ramp measured less than 48 inches in depth.[2]
16       20.  Gilbert's testimony about whether he personally
17 encountered any barriers during his June 4, 2022 visit to the
18 Store was vague, ambiguous, and somewhat contradictory.
19 Accordingly, the court finds that he has failed to meet his
20 burden of establishing by a preponderance of credible evidence
21 that he personally encountered any barriers during his June 4,
22 2022 visit to the Store.
23       21.  After the filing of this lawsuit, the parking lot
24 and entry walkway were remodeled such that the Store now has an
25 ADA-compliant van accessible parking stall, access aisle, curb

---

[2] Plaintiff's expert also testified that the entry walkway was excessively sloped, but plaintiff's proposed findings of fact do not ask the court to so find, and plaintiff testified that he had no problem walking on the sidewalk to the front door.

4

1 | ramp, and entry walkway.
2 |     22.  Gilbert concedes that after remodeling, the van
3 | accessible parking stall, access aisle, curb ramp, and entry
4 | walkway comply with the ADA.  Gilbert did not request an
5 | injunction as to these features in his pretrial filings or at
6 | trial.
7 |     23.  During Gilbert's August 3, 2021 visit to the
8 | Store, he did not have any difficulty walking from the top of the
9 | sidewalk curb ramp to the front entrance of the store and did not
10 | have any difficulty entering the store.
11 |     24. During Gilbert's August 3, 2021 and June 4, 2022
12 | visits to the Store, he used his prosthetic leg and did not use a
13 | cane or a wheelchair or require any assistance.
14 |     25.  During Gilbert's August 3, 2021 visit, his wife
15 | stayed in the car at all times.
16 |     26.  Gilbert did not require the use of a wheelchair
17 | during his August 3, 2021 and June 4, 2022 visits to the Store
18 | and did not show that he wanted to use a wheelchair during either
19 | visit.
20 |     27.  Gilbert testified that he encountered barriers
21 | inside the store due to narrow and/or obstructed aisles and
22 | cluttered counters, but Gilbert has not shown that any of these
23 | alleged barriers were in fact barriers to him as a person who
24 | walks with a prosthetic leg on the days in question.  The court
25 | finds his testimony that these issues hindered his access not
26 | credible.  The court further finds that these alleged barriers
27 | did not impact his access to the goods and services offered at
28 | the Store on August 3, 2021 or June 4, 2022.

5

28.     Gilbert has also identified purported ADA violations inside the Store based on aisle widths, counter heights, the entrance doors, a food display, the lottery ticket kiosk, the fire extinguisher, the condiment counter, and self-service food and beverage dispensers.  Gilbert has not shown that any of these purported violations constituted barriers to him as a person with a prosthetic leg.  These alleged barriers did not impact Gilbert's access to the goods and services offered at the Store on August 3, 2021 and June 4, 2022.

29.     Gilbert did not alert anyone at the store of the barriers he encountered or identified and did not expect that any of those barriers would be remedied after his first visit.

30.     Gilbert is not a regular patron of the Store. Gilbert lives more than an hour away from the store and has not identified any family or friends currently living or working in the area.  Gilbert has no particular reason for visiting Rio Linda or this store in the future.  The Store is not located en route to any location identified by Gilbert to which he is likely to travel.  Gilbert's current medical condition also hinders his ability to travel.  The court does not find Gilbert's testimony that he would return to this store if the alleged barriers are removed to be credible.

31.     Gilbert has filed approximately 70 ADA lawsuits.

32.     While Gilbert did purchase items at the Store during his two visits, the court finds that his primary motivation for the two visits was to further litigation.  The court does not believe that he would have visited the store on either day but for his desire to find violations of the ADA and

6

Unruh Act in order to obtain a settlement or damages.

33. Gilbert has no genuine intent to return to the Store.

34. In plaintiff's proposed Findings of Fact and Conclusions of Law, trial brief, and proposed Judgment, Gilbert does not refer to his third claim for Denial of Full and Equal Access to Public Facilities. Nor did plaintiff provide any evidence or argument on this claim at trial.

B. Conclusions of Law

1. Because Gilbert is substantially limited in his ability to walk, Gilbert is disabled as that term is defined by the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

2. As a convenience store, the Store is a place of public accommodation. 42 U.S.C. § 12181(7)(B).

3. 7-Eleven is obligated to make the Store accessible to persons with disabilities. 42 U.S.C. § 12182(b)(1)(A)(i).

4. The Store is subject to the ADA Accessibility Guidelines ("ADAAG"). The Department of Justice ("DOJ") promulgated the ADAAG in 1991 and revised them in 2010. See Kohler v. Flava Enters., 826 F. Supp. 2d 1221, 1229 (S.D. Cal. 2011). All architectural and structural elements in a facility are required to comply with the 1991 Standards to the extent that compliance is readily achievable. By contrast, the 2010 standards apply only to elements that have been altered in existing facilities, or that fail to comply with the 1991 Standards, on or after March 15, 2012. 28 C.F.R. § 36.304(d)(1)-(2).

1        5.   Plaintiff has not shown by a preponderance of credible evidence that any architectural or structural elements of the Store have been altered since the Store was completed in 1983.  Accordingly, defendant is therefore only liable for architectural barriers that failed to comply with the 1991 Standards.  See 28 C.F.R. § 36.304(d)(2)(i).  However, because defendant made architectural modifications to the Store after plaintiff filed this lawsuit, the court applies the 2010 standards in determining whether those modifications have remedied the alleged ADA violations.  See id.

         6.   At the times Gilbert visited the Store, the Store failed to provide a van-accessible parking space fully compliant with the ADA.

         7.   During his visits to the Store, Gilbert personally encountered a lack of accessible route of travel from the designated accessible parking to the Store entrance because the designated accessible parking was not located on the shortest route to the Store entrance in violation of ADAAG 4.6.2, the curb ramp contained slopes in excess of 8.33% in the direction of travel and cross slopes in excess of 2% in violation of ADAAG 4.3.7, and the top landing of the curb ramp measured less than 60" inches in depth in violation of ADAAG 4.8.4.

         8.   Because 7-11 was able to alter its van accessible parking stall, access aisle, curb ramp, and entry walkway to comply with the ADA, "there is no genuine dispute that the changes it implemented were 'readily achievable.'"  See Johnson v. Wayside Prop., Inc., 41 F. Supp. 3d 973, 978 (E.D. Cal. 2014) (Shubb, J.); see also Wilson v. Pier 1 Imps. (US), Inc., 439 F.

8

Supp. 2d 1054, 1069 (E.D. Cal. 2006) (Karlton, J.) ("Given that the barrier has already been cured, the court must find that [removal] was readily achievable, and thus that it violated the ADA . . . ."). Accordingly, Gilbert has established that 7-Eleven violated the ADA with regard to the route of travel from the designated accessible parking to the Store.

9. Because Gilbert has established a violation of the ADA, he has also established a violation of the Unruh Act. Cal. Civ. Code § 51(f) ("A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 . . . shall also constitute a violation of this section.").

10. Because the Store now has an ADA-compliant van accessible parking stall, access aisle, curb ramp, and entry walkway, his claim for injunctive relief as to those features is moot. See, e.g., Oliver v. Ralphs Grocery Co., 654 F.3d 903, 905 (9th Cir. 2011).[3]

11. Gilbert is also not entitled to an injunction as to the ADA-compliant van accessible parking stall, access aisle, curb ramp, and entry walkway because there is no likelihood that these barriers will recur. See Johnson v. Gallup & Whalen Santa Maria, No. 17-cv-01191 SI, 2018 WL 2183254, at *3 (N.D. Cal. May 11, 2018) (quoting Lozano v. C.A. Martinez Family Ltd. P'ship, 129 F. Supp. 3d 967, 971 (S.D. Cal. 2015)) (explaining that "where defendants would have to undo structural alterations to violate the ADA," violations could not be reasonably expected to recur).

---

[3] Gilbert also does not request an injunction as to these features.

1           12.    Once an ADA plaintiff personally encounters
conditions which interfere with his full and equal access to a
public accommodation, he has standing to seek the removal of all
conditions, even those he did not encounter, that would interfere
with his full and equal access in the future.  Chapman v. Pier 1
Imps. (U.S.) Inc., 631 F.3d 939, 944 (9th Cir. 2011).

            13.    However, "[a] plaintiff's standing to claim an ADA
violation is necessarily linked to the nature of his disability."
Id. at 947 n.4.  "Thus, a blind person would have standing to
assert an ADA violation where a newly constructed multi-story
facility has elevators lacking floor buttons in Braille," while a
defendant who is not visually impaired would not have standing in
that situation.  Id.  See also Doran v. 7-Eleven, Inc., 524 F.3d
1034, 1044 n.7 (9th Cir. 2008) (wheelchair user could only
"challenge those barriers that might reasonably affect a
wheelchair user's full enjoyment of the store," and did not have
standing to challenge barriers to someone who is blind).  Thus, a
plaintiff may not obtain an injunction "if the barriers he seeks
to enjoin do not pose a real and immediate threat to him due to
his particular disability."  Chapman, 631 F.3d at 953.

            14.    There is no indication that the requirements of
ADAAG 4.6.2 and ADAAG 4.3.7, pertaining to the slope of the curb
ramp, were intended to accommodate only wheelchairs to the
exclusion of disabled persons walking with the assistance of
prosthetic legs.  Thus, because Gilbert personally encountered
violations of those provisions that relate to his disability, he
has standing to seek an injunction requiring the Store to be made
fully accessible to him, including the remediation of barriers he

10

did not personally encounter.

15. However, because none of the purported barriers inside the store on August 3, 2021 and June 4, 2022 reasonably affected Gilbert's full enjoyment of the Store as a person with a prosthetic leg, they did not interfere with his full and equal access to the Store, and he has no standing to seek injunctive relief under the ADA as to these barriers. See Chapman, 631 F.3d at 953.

16. Gilbert is also not entitled to an injunction to any of the purported barriers at the Store because he is unlikely to return. Chapman, 631 F.3d at 944 (plaintiff lacks standing "if he is indifferent to returning to the store or his alleged intent to return is not genuine").

17. Because none of the purported barriers inside the store on August 3, 2021 and June 4, 2022 interfered with his full and equal access to the Store, he may not recover under California Civil Code § 55.56 for these barriers.

18. Even if a defendant has removed barriers to access and thereby mooted the plaintiff's ADA claim, those remedial measures will not moot an Unruh claim for damages. Wayside Prop., 41 F. Supp. 3d at 980–81 (citing, inter alia, Wilson, 439 F. Supp. 2d at 1069.

19. Defendant argues that a plaintiff may not recover damages under the Unruh Act where, as here, his visit was motivated primarily by a desire to advance his position in litigation, citing Thurston v. Omni Hotels Management Corp., 69 Cal. App. 5th 299, 308-9 (4th Dist. 2021); Antoninetti v. Chipotle Mexican Grill, Inc., 643 F.3d 1165, 1177 (9th Cir.

2010); Antoninetti v. Chipotle Mexican Grill, Inc., No. 05CV01660 BTM (WMC), 2012 WL 12845619, at *5 (S.D. Cal. Mar. 21, 2012). The court does not read these cases to support defendant's proposition.

Thurston explains that under the Unruh Act, a defendant must have a "bona fide intent" to use a business's services. Thurston, 69 Cal. App. 5th at 308-09. However, Thurston involved an Unruh Act claim by a plaintiff who claimed a hotel's website was not accessible, but the plaintiff never tried booking a reservation by using a third-party website or calling the hotel directly, never looked at any other hotel websites, and never made any hotel reservation when she searched for a room. The jury rejected her Unruh Act claim finding, among other things, that the plaintiff never intended to make a hotel reservation or ascertain the hotel's prices and accommodations for the purpose of making a hotel reservation, and the Court of Appeal affirmed. In contrast, here, there is no dispute that plaintiff actually purchased items during his visits to the Store, which is direct evidence of a bona fide intent to use the Store's services, even if his motivation for using those services was primarily to establish standing to bring a subsequent lawsuit.

The Antoninetti cases,[4] instead of supporting defendant's position, support Gilbert's claim for damages. As the Ninth Circuit explained, under the Unruh Act, an individual must establish that he was denied equal access on a particular

---

[4] Antoninetti, 2012 WL 12845619, is the district court's decision on remand from the Ninth Circuit, whose decision is found at 643 F.3d 1165.

12

occasion.  643 F.3d at 1177.  To do so, the plaintiff complaining of barriers in a restaurant "must show that he actually presented himself to the restaurant on a particular occasion, as any other customer would do, with the intent of being served and to purchase food in the manner offered and actually encountered access to the restaurant that was not full and equal."  Id. (cleaned up) (citing Reycraft v. Lee, 177 Cal. App. 4th 1211, 1226 (4th Dist. 2009)).

On remand, the trial court held that the plaintiff encountered barriers and was a bona fide customer on the five visits he made to the restaurant where he purchased food, and the plaintiff was thus entitled to damages for each of those five visits.  2012 WL 12845619, at *4-7.  In contrast, the plaintiff was not entitled to damages for the three visits he made where he did not make any purchases and was only gathering evidence for litigation.  Id. at *4-5.

Here, Gilbert presented himself to the Store as any other customer would, purchased items at the Store as any other customer would, and encountered access to the Store that was not full and equal given the parking lot barriers he encountered.  That is all that is required for damages under the Unruh Act.  As the court has found, Gilbert's primary motivation in visiting the Store was to obtain a settlement or damages from 7-Eleven.  If the Unruh Act permitted a court to deny damages where the primary motivation is litigation, the court would deny damages here.  However, defendant has cited no case, and the court is unaware of any, establishing that a plaintiff who makes purchases at the business as a normal member of the public would may not recover

13

1  damages simply because the primary motivation for the visit to
2  business was for litigation purposes.
3         20.  A violation of the Unruh Act entitles Gilbert to
4  mandatory statutory damages of $4,000 for each occurrence he was
5  discriminated against.  Cal. Civ. Code § 52(a); Jankey v. Lee, 55
6  Cal. 4th 1038, 1044 (2012).
7         21.  Because Gilbert established that there was an ADA
8  violation during his August 3, 2021 visit to the Store, he is
9  entitled to $4,000 in statutory damages under the Unruh Act.
10        22.  "[I]n an action alleging multiple claims for the
11 same construction-related accessibility violation on different
12 particular occasions, California law requires the trier of fact
13 to consider the reasonableness of the plaintiff's conduct in
14 light of the plaintiff's obligation, if any, to mitigate
15 damages."  Wayside Props., 41 F. Supp. 3d at 981 (cleaned up)
16 (quoting Cal. Civ. Code § 55.56(h).  Relevant to this analysis is
17 whether the plaintiff alerted the defendant to the barriers he
18 encountered or whether he expected the barriers to have been
19 removed after the first visit.  Id.
20        23.  Because Gilbert did not establish that he
21 personally encountered any barriers during his June 4, 2022 visit
22 to the Store, because he has not shown that he mitigated his
23 damages, and most importantly because he does not appear to
24 request damages on account of that visit, the court will not
25 award any damages under the Unruh Act for the June 4, 2022 visit.
26        24.  Because plaintiff has no standing under the ADA to
27 assert his claims regarding features inside the Store and his
28 claims regarding features outside the Store are moot, the court

will enter judgment for defendant 7-Eleven on the ADA claim.

25. Because Gilbert has established a violation of the Unruh Act and is entitled to $4,000 in statutory damages, the court will enter judgment for Gilbert on the Unruh Act claim and award $4,000 in damages.

26. Because Gilbert did not provide any evidence or argument in support of his third claim for Denial of Full and Equal Access to Public Facilities during trial, he has not proven this claim by the preponderance of the evidence, and the court will enter judgment for defendant on this claim.

III. Conclusion

For all the foregoing reasons, THE COURT HEREBY FINDS in favor of plaintiff on his claim against defendant 7-Eleven, Inc. under the Unruh Act and awards plaintiff $4,000 against said defendant.  THE COURT FURTHER FINDS in favor of defendants on all other claims.

The Clerk of Court is instructed to enter judgment accordingly.

IT IS SO ORDERED.

Dated:  October 2, 2023

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE